Chapman, J.
The petition alleges that the plaintiff is in possession of a two story brick building abutting on Euclid avenue in the city of Cleveland; that he is conducting a salesroom for automobiles, especially the “Royal”; that he has caused to be erected at right angles to the face of said building an electric sign with the word “Royal” in electrically illuminated letters; that said sign, projects into the street and over the portion thereof used as a sidewalk about ten feet and is about fourteen feet above the sidewalk; that he had received a permit from the board of public *194 service to erect a sign of the character stated, but to project over the street only about six feet; that the board is threatening to remove said sign for the reason that it exceeded one quarter of the width of said sidewalk, as provided in said permit. Plaintiff alleges that the city council by ordinance had ordained the mode and manner in which electric signs may be erected and their dimensions, the manner and time of lighting and the length of time they shall remain lighted, and that the plaintiff’s sign in all respects is in accordance with the provisions of the ordinance, and plaintiff asks that the city and the board be enjoined from removing said sign.
To this petition the city demurs, and therefore admits all the facts stated in the petition. So far as the right of the board of public service to prescribe different provisions or regulations for the construction of signs than those provided by the ordinance, it is conceded that the board has no such right, and that the fact that this sign is not in accordance with the permit gives neither the city nor the board any right to remove it. The authority of the board is purely administrative and not legislative and its duty is discharged and its powers exhausted when it sees that the provisions of the laws and ordinances are enforced, and it can not impose new or different conditions to suit its own ideas.
But it is contended by the city that neither the city itself nor the council can authorize or permit signs or other obstructions to be placed in its streets, and it is therefore contended that an abutting owner has no right to place such signs over a street, even under an ordinance regulating such structures and permitting their erection. The city contends that all structures projecting into or over a public street, of whatever character, erected by private owners abutting on the street for private uses and purposes, are nuisances which the city is bound by law to remove, and that a private owner has no right to erect any such structures in a public street.
It is conceded by the plaintiff that the council has the right to regulate such structures and, if in the exercise of a reasonable discretion, to prohibit their erection, but plaintiff contends that *195 until council has so prohibited such structures, a private owner may erect and maintain them, in the reasonable exercise of his right in the street; that this right is incident to his ownership of the abutting property.
The question presented seems to call for a determination and to depend largely upon the respective rights of the city and of abutting owners in public streets.
In this state cities may acquire rights in respect to public streets in three different modes:
1. By extension of its boundaries so as to include country roads.
2. By dedication by private owners and acceptance by council.
3. By condemnation for street purposes.
In the first ease the fee of the street remains in the abutting ownei’s. In the second and third the fee of the street is in the city in trust for street purposes. Traction Co. v. Parish, 67 O. S., 181-190.
But, as said by Ranney, J., in Street Railway Co. v. Cumminsville, 14 O. S., 523, at 544:
“In either of the modes known to our laws by which lands are acquired for a public highway, an interest, commensurate with the attainments of the objects of the acquisition, vests in the public at large and is necessarily placed under the exclusive control of the law-making power: Whatever is fairly within the grant, whether voluntary or forced and necessary to its beneficial enjoyment, is within the legal operation of the instrument or proceeding by which it is effected.”
That a fee, in the ordinary legal use of that word, is in the city seems not to be justified by any of our decisions. So far as I can find, it has always been said that “the fee is in the city in trust for street purposes,” and, as pointed out by Ranney, the extent of the public right is limited to whatever is fairly within the grant and necessary to its beneficial enjoyment. Nothing more is taken from the property owner by condemnation- or by voluntary dedication than in the case of country roads. It seems that the limit of the public light must be *196 the same in all eases. Ranney, J., has described the limit of the public right in the case of country roads. 2 O. S., 419, at 426:
“The public has acquired, and, we are bound to- suppose, had paid for, to the satisfaction of the owners, a perpetual easement in the land covered by the road, which gave the right to all persons to pass and repass over it at pleasure, either on foot or by any mode of conveyance they might see fit to employ; and also the right to improve it, for that purpose, in any manner that might be thought, by the Legislature, most conducive to the end in view, and would best subserve the interests and convenience of the public at large.
“The owners retained the fee of the land subject to the easement, and the right to use it in any manner not inconsistent with the full and perfect enjoyment, by the public, of the interest acquired by it, so long as it continued to be used for that purpose.”
Again Ranney says, in Traction Co. v. Cumminsville, 14 O. S., 523, at 546:
“The distinction lies between these things which fairly belong to the grant, and those which are reserved to the owner, or by law attach as incidents to his property. For this purpose, there is no occasion to distinguish between lands acquired for ordinary highways, leaving the fee in the owner, and lands dedicated for streets in towns, where the fee vests in the municipal corporation, in trust to answer the purposes of the use. In either case, the interest acquired and used by the public at large, is an easement of a definite character and held for the attainment of known objects; and in either case, ‘distinct from the right of the. public to use the street, is the right and interest of the owners of lots adjacent.’ ”
And in Crawford v. Village of Delaware, 7 O. S., 495, at 496, this language is used:
“Distinct from the right of the public to use a street, is the right and interest of the owners of lots adjacent. The latter have a peculiar interest in the street, which neither the local nor the general public can pretend to claim: a private right of the • nature of an incorporated hereditament, legally attached to their 'contiguous grounds, and the erections thereon; an incidental title to certain facilities and franchises, assured to them by contracts and by law, and without which their property *197 would be comparatively of little value. • This easement, append-ant to the lots, unlike, any right of one lot-owner in the lot of another, is as much property as the lot itself. ’ ’
And finally that there is no distinction between the right of the abutting owner on a country road and a city street was held by Spear, J., in Callen v. Electric Light Co., 66 O. S., 166 at 174:
‘ ‘ It would seem to follow from the foregoing that, for practical purposes, there is no substantial difference in the right of the owner of lands abutting upon a country highway in such highway and that of the owner of a lot abutting on a city street in such street. In the one case, where the fee is in the landowner, his rights in and over the streets are in their nature legal, while if the fee be in the public, the lawful rights of the abutting owners are in their nature equitable easements. In both situations the right of the public is for road or street purposes, and is necessarily limited to such control'as is necessary to accomplish those purposes. As to country highways that object is accomplished ordinarily by securing free passage for travel and reasonable maintenance and repair, while as to city streets the necessary uses and consequent control is the same, viz., for street purposes. ’ ’
In Clark v. Fry, 8 O. S., 395, it was heid by the court that the abutter has a right incident to his ownership to deposit temporarily building materials in the street and also to construct a six foot areaway in connection with the cellar under the sidewalk in the street; that such uses are not nuisances, but proper uses of the abutter’s property and subject to legislative or municipal regulation.
In Columbus v. Penrod, 73 O. S., 209, the court held that the granting of a permit by the city authorities to deposit such building materials was a mere regulation of the property owner’s right.. The paragraph of the syllabus is as follows:
“A permit by a city to use part of the street for the placing of building materials for use in the construction of a building on the adjacent property is the mere regulation of a right of the property owner to make such use of the street, and not a license to do an act in the street which but for such license would be illegal or a nuisance.” * * *
*198 The right of the abutting owner to the use of the street for private purposes has been repeatedly recognized. The cases in 21 O. S., 248, 39 O. S., 333, 43 O. S., 190, 63 O. S., 229, 66 O. S., 215, decided by the Supreme Court are all in recognition of this.
The circuit courts of the state have also recognized this right. 4 C. D., 8, 12 Dec., 650, 1 C. C.—N. S., 289, 9 C. C., 558. All the foregoing cases recognize that the abutting owner has rights in the public street other than mere ingress and egress. In short, the result of the authorities in this state is that the abutter has all the rights other than those taken by the public for street purposes and the uses necessarily incident thereto. Whatever rights it is necessary that the public shall have in order to effect and carry out the purposes for which the street is taken, it has and no more. Any public use necessary for street purposes the property owner has yielded up for a consideration paid at the time the street is taken by the public. Any private use not inconsistent with the public use still remains iff the owner as incident to his ownership of the abutting property.
Counsel for the city cite and urge upon the court the portion of the opinion of the Supreme, Court in Traction Co. v. Parish, 67 O. S., 181, at 191, a ease wherein it was speaking of the abutting property owner’s right to give or withhold his consent to the construction of a street railway, in front of the property, as follows:
“His easement of ingress and egress being the only property right he has in .the street, the city authorities had the power under the Constitution to construct and operate a street railroad on and along the street without his consent and against his will unless restrained by the statute, provided they cause no material interference with his easement of ingress and egress.”
In the light of the facts of the case, it seems clear in view of both former and subsequent decisions of that court, that it was not intending nor did the case call for a comprehensive decision as • to the right of the abutting property owner in *199 the street. Only the surface of the street was in question before the court, and, as has always been the course of decision in this state, a street railway is not an additional burden for which an abutter is entitled to compensation. Ingress and egress being the only right interfered with, such abutter is not entitled to prevent the city authorities granting a right to construct and operate a street railway any more than he would be entitled to prevent the construction of a plank road or a turnpike, or establishing a grade. These interferences are with the right of ingress or egress, for which he has received compensation at the time of the original taking. Surely the court was not called upon to say that the right of ingress and egress comprised the only right of an abutter in the street. To do so, it must certainly overrule many of its former decisions, and at least one since the Parish case.
Counsel finally urge Railway Co. v. Elyria, 69 O. S., 414, and Zanesville v. Farnam, 63 O. S., 605, as well as Section 1536-131 and 6920 of the Revised Statutes.
These decisions hold that the city can not grant the right to permanently obstruct or encumber the street, and that it is charged with the duty of removing such obstructions. Such permanent obstructions erected by a private owner are inconsistent with the public use and interfere with the primary right to which the street is devoted. It is easy to see that such structures are real interruptions to the public use of the streets, and consequently nuisances, but it is not so easy to see how a sign fourteen feet above 'the sidewalk interferes with any known public use, at least in this case no such interference is shown.
Section 1536-131 creates a duty on the part of the city, the violation of which may give rise to a cause of action (46 O. S., 442), but it does not define a nuisance, nor does the section deprive an abutting owner of any property right he may have in the street, and it does not make his exercise of such right a nuisance.
Section 6920 makes the obstruction of a street criminal, but does not define obstruction so as to include a sign' such as plaintiff's, and consequently this section seems inconclusive as to the question here involved.
*200 I therefore conclude that in this state, in order to be a nuisance within the law, the obstruction must be a real obstruction or menace to the public use to which the street is or may b? devoted. It must be an actual or threatened interference with the primary right of the public to use the street for transit an' other incidental public purposes; that short of such actual or threatened interference with the primary or paramount right of the public the abutter retains the right to make such use of the street for private purposes as are not inconsistent with its use by the public; that such use by an abutter is subject to regulation in the interest of the public, but until such regulation is adopted, or if adopted the use complies with such regulation, the abutter may exercise his right in the street in any lawful manner not inconsistent with the public right. If the right which the abutter seeks -is or hereafter becomes an interference with or menace to the' right of the public, he must conform to such public use, but until required to give way to a public use he may use the street for his own private purposes, subject to reasonable regulation.
The statutes of the state seem to recognize this right both of the abutter and of public regulation. Section 3536-100 gives council the right “to provide for the removal and repair of insecure signs. ’ ’
I have not examined the decisions of other states cited by either counsel, as I have not had time to investigate the course of legislation and decision so as to apply such decisions to our question, and unless the course of such decisions is investigated the application of such cases would1 be very uncertain, and in view of the many holdings of our state, I have not thought it necessary to enter into such research.
No precise limits can be set as to where the public right leaves off and the private right begins, but means of transit and communication, including grades, sewer drains, water and gas pipes, conduits, poles, wires, and such other uses as may hereafter be declared public are street purposes, but beyond that all else is private right belonging to the abutter.
As was well said by Ranney, J., in Street Railway Co. v. Cumminsville, supra, 548-9 :
Hoyt, Dustin <& Kelley, for plaintiff.
Newton D. Balter, City Counsel, for defendant.
“Such an easement, whether acquired by a voluntary grant or appropriation," requires a certain reasonable and costumary adaptation of the land, to all the various uses to which a road is applied. What this will require, and what burden will be imposed upon the land, may be easily foreseen by him who grants it voluntarily, and easily estimated for him from whom it'is taken by appropriation; and whatever it is, with the necessary incidents of maintaining it perpetually, constitutes the public right and interest — all else is private right, and securely guarded from invasion by the Constitution of the state.”
The demurrer, therefore, will be overruled.